IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ADAM STRONG, | Civil No. 3:23-cv-224 |
| Plaintiff | (Judge Mariani) |
| v. | |
| UNITED STATES OF AMERICA, *et al.*, | |
| Defendants | |

## MEMORANDUM

Plaintiff Adam Strong ("Strong"), an inmate confined at the Federal Correctional Institution, Schuylkill, in Minersville, Pennsylvania ("FCI-Schuylkill"), filed this action against the United States of America under the Federal Tort Claims Act ("FTCA")[1], and against two individual Defendants pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971)[2], based on negligence and Eighth Amendment deliberate indifference to serious medical needs. By Memorandum and Order dated April 10, 2024, the Court granted the individual Defendants' motion for summary judgment on the *Bivens*

---

[1] The FTCA vests exclusive jurisdiction in district courts for claims against the United States for money damages involving "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

[2] In *Bivens*, the United States Supreme Court created a federal tort counterpart to the remedy created by 42 U.S.C. § 1983 as it applies to federal officers.

claim.³ (Docs. 30, 31). The only claim remaining for disposition is Strong's FTCA claim against the United States.

Before the Court is the United States' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 45). For the reasons set forth below, the Court will grant the United States' motion and enter judgment in its favor.

---

³ Strong raised an Eighth Amendment claim under *Bivens* against the individual Defendants. (Doc. 1, at 6). In the April 10, 2024 Memorandum and Order, the Court granted the individual Defendants' motion for summary judgment on the *Bivens* claim based on failure to exhaust administrative remedies. (Docs. 30, 31). The Court notes that Strong's Eighth Amendment claim would also fail on the merits. While the Supreme Court in *Carlson v. Greene*, 446 U.S. 14 (1980), recognized a *Bivens* cause of action under the Eighth Amendment for inadequate medical care, Strong failed to establish that the individual Defendants were deliberately indifferent to his serious medical needs. *See also Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024) (citing *Carlson*, 446 U.S. 14). As set forth *infra*, the facts show that Strong was not denied medical care, he was subject to continuing treatment, and there was no medical negligence. Based on those same facts, the Court cannot conclude that there was deliberate indifference to his medical needs. The evidence falls short of any indication that the individual Defendants knew of and disregarded an excessive risk to Strong's health. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003); *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

I.   **Factual Background & Procedural History**[4]

Strong is serving a 168-month sentence imposed by the United States District Court for Connecticut for drug offenses. (Doc. 49 ¶ 2). His projected release date is August 10, 2030, via good conduct time. (*Id.* ¶ 3).

Strong's claim arises from events occurring in November of 2021, at FCI-Schuylkill. (*Id.* ¶ 4).

Facts regarding Strong's Medical History

On November 10, 2021, FCI-Schuylkill Health Services staff evaluated Strong for complaints of redness, swelling, and pain to his lower left leg. (*Id.* ¶ 5). Strong was placed on an oral antibiotic. (*Id.*). Later that day, medical staff treated Strong for continued complaints of swelling and pain, and he was referred to an outside hospital for evaluation. (*Id.* ¶ 6). Strong was sent to the outside hospital on November 10, 2021, and was

---

[4] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. PA. LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. *Id.* Unless otherwise noted, the factual background herein derives from the United States' Rule 56.1 statement of material facts and supporting exhibits. (Doc. 49). Although Strong filed briefs (Docs. 51, 57) in opposition to the United States' motion, he did not file a response to the United States' statement of material facts. Therefore, as authorized by Local Rule 56.1, the Court will admit as uncontroverted the statement of facts submitted by the United States. *See* M.D. PA. LOCAL RULE OF COURT 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."); *see also Rau v. Allstate Fire & Cas. Ins. Co.*, 793 F. App'x 84, 87 (3d Cir. 2019) (upholding this Court's decision to strike non-movant's non-responsive counterstatement of facts under Local Rule 56.1); *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613 (3d Cir. 2018) (finding that "the District Court is in the best position to determine the extent of a party's noncompliance with Local Rule 56.1, as well as the appropriate sanction for such noncompliance").

3

discharged from the hospital on November 12, 2021. (*Id.* ¶ 7). Upon return to FCI-Schuylkill, Health Services staff met with Strong and reviewed his discharge instructions. (*Id.* ¶ 9). It was noted that Strong was initially given an oral antibiotic (doxycycline), which did not provide any improvement. (Doc. 49-9, at 2). He was then treated with an intravenous ("IV") antibiotic (dalbavancin) at the hospital, which is a single dose antibiotic that lasts for ten days. (*Id.*). Medical staff informed Strong that he should follow-up with his provider on the next business day, November 15, 2021. (Doc. 49 ¶¶ 8-9).

On November 14, 2021, Paramedic Loury evaluated Strong for complaints of pain in his lower left leg from his ongoing cellulitis. (*Id.* ¶ 11). Strong was advised to follow-up at sick call as needed. (*Id.* ¶ 12). At approximately 8:00 p.m. on November 14, 2021, Health Services staff treated Strong for continued complaints of swelling and pain in his lower left leg. (*Id.* ¶ 9). Strong stated he saw open sores on his leg early that morning and that the pain had increased. (*Id.*). Staff contacted the Acting Clinical Director, who advised that Strong be transferred back to the hospital for further evaluation. (*Id.*).

On November 14, 2021, Strong was admitted to Hershey Medical Center for continued cellulitis in his lower left leg. (*Id.* ¶ 10). Strong underwent treatment with antibiotics and was discharged back to FCI-Schuylkill on November 25, 2021. (*Id.*). Upon his return to FCI-Schuylkill on November 25, 2021, Health Services staff met with Strong and reviewed his discharge instructions. (*Id.* ¶ 17).

4

On November 29, 2021, Health Services staff met with Strong for a follow-up. (*Id.* ¶ 18). During this visit, Strong indicated he still had some swelling and was not using the recommended creams. (*Id.* ¶ 19). Staff renewed his antibiotic, advised him to use the creams as directed, and scheduled him for a follow-up in one week. (*Id.* ¶ 20).

Strong had appointments scheduled on December 2, 2021, and December 10, 2021, but he did not show for those visits. (*Id.* ¶ 21).

On December 15, 2021, Health Services staff treated Strong. (*Id.* ¶ 22). At this visit, he initially refused recommended lab work and staff noted his continued noncompliance with recommended treatment. (*Id.*).

Health Services staff noted Strong's continued noncompliance through January of 2022. (*Id.* ¶ 23). On January 28, 2022, medical staff noted that Strong was "counseled repeatedly on significant non-compliance but [he] continues to not be compliant with treatment plan—not taking medications, not following low salt diet, not wearing compression stockings as directed." (Doc. 49-17, at 4).

The United States maintains that Strong continues to be treated for recurring cellulitis, but his treatment is complicated by his refusal to comply with treatment regimens. (Doc. 49 ¶ 24). Medical staff is and, at the relevant time, was reduced on the weekends at the institution. (*Id.* ¶ 25). At the relevant time, FCI-Schuylkill was operating under COVID-related modifications and had over 1000 inmates with various medical needs including regular provision of medications and treatment of emergency conditions. (*Id.* ¶ 26).

5

Facts Regarding Expert Opinions of Ellen Mace-Leibson, M.D.

Strong contends that the alleged failure of medical staff to assess his cellulitis on November 13, 2021, resulted in a worsening of his infection requiring hospitalization and recurrence of infection in the same leg. (Id. ¶ 27). It is Dr. Mace-Leibson's opinion, to a reasonable degree of medical certainty that, assuming medical staff waited to assess Strong until November 14, 2021, such delay was reasonable and in conformance with the standard of care for the treatment of Strong's cellulitis. (Id. ¶ 28). A cellulitis like the one Strong suffered from is a bacterial infection of the skin tissue. (Id. ¶ 29). Cellulitis manifests as an area of skin erythema, edema, and warmth; it develops as a result of bacterial entry via breaches in the skin barrier. (Id.).

Strong has a history of cellulitis prior to and after November 12 through 14, 2021. (Id. ¶ 30). Strong's history is consistent with his underlying chronic condition, uncontrolled psoriasis. (Id. ¶ 31). Strong's condition is uncontrolled due to noncompliance with his treatment regimen, cream, and biologic medication. (Id. ¶ 32). Uncontrolled psoriasis leads to cracking and open skin which increases entry of bacteria into the layers of the skin leading to cellulitis. (Id. ¶ 33). The antibiotic given to Strong can take several days after being administered to show relief in symptoms such as pain and swelling. (Id. ¶ 34).

Dr. Mace-Leibson's opinion is based upon the treatment of the cellulitis on November 12, 2021, with an infused ten-day course of antibiotics which was medically appropriate to treat the infection. (Id. ¶ 35). It is the opinion of Dr. Mace-Leibson, to a

reasonable degree of medical certainty, that waiting until November 14, 2021, to assess Strong's cellulitis was reasonable and did not violate the medical standard of care based on the above. (*Id.* ¶ 36).

Dr. Mace-Leibson graduated from Kirksville College of Osteopathic Medicine with Doctor of Osteopathic Medicine degree on June 6, 1999. (*Id.* ¶ 37). Dr. Mace-Leibson is board certified in Family Medicine. (*Id.* ¶ 38). In the past ten years, Dr. Mace-Leibson has authored no publications. (*Id.* ¶ 39). Dr. Mace-Leibson has not testified as an expert in the last four years at either a deposition or trial. (*Id.* ¶ 40). Dr. Mace-Leibson has not received any compensation beyond what is provided by her employment for the Bureau of Prisons. (*Id.* ¶ 41).

## II.   Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a

genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of

> material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## III.     Discission

The FTCA provides that "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The substantive state law where the tortious conduct occurs, in this instance, Pennsylvania, governs an FTCA claim. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 700 (2004).

Under Pennsylvania law, medical negligence, or medical malpractice, is defined as "the unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient, including all liability-producing conduct arising from the rendition of professional medical services." *Toogood v. Owen J. Rogal, D.D.S., P.C.*, 824 A.2d 1140, 1145 (Pa. 2003) (citing *Hodgson v. Bigelow*, 7 A.2d 338 (Pa. 1939)). The existence of an injury, by itself, does not prove a doctor's negligence. *Mitchell v. Shikora*, 209 A.3d 307, 315 (Pa. 2019) (citations omitted). Rather, under Pennsylvania law, to establish a cause of action for negligence, the plaintiff must prove the following elements: "(1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury;

and (4) actual loss or damage resulting in harm to the interests of another." *Northwestern Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 139 (3d Cir. 2005) (citing *In re TMI*, 67 F.3d 1103, 1117 (3d Cir. 1995)); *see also Mitchell*, 209 A.3d at 315.

"Determining whether there was a breach of duty, however, involves a two-step process: the court must first determine the standard of care; it then must examine whether the defendant's conduct measured up to that standard. Not only does the plaintiff have the burden of proving that the defendant did not possess and employ the required skill and knowledge, or did not exercise the care and judgment of a reasonable professional, he or she must also prove that the injury was caused by the failure to employ that requisite skill and knowledge." *Toogood*, 824 A.2d at 1149. Plaintiffs must also demonstrate that the doctor's conduct was a "substantial factor in bringing about" their harm—liability does not extend if the injuries would have occurred in the absence of negligence. *Hamil v. Bashline*, 392 A.2d 1280, 1284 (Pa. 1978) (citations omitted).

When Strong initially presented for treatment on November 10, 2021, medical staff evaluated him and, based on his symptoms, transferred him to an outside hospital. (Docs. 49-6, 49-7). At the hospital, Strong received an IV antibiotic that lasts for ten days and was discharged from the hospital on November 12, 2021. (Doc. 49-8). Upon return to FCI-Schuylkill, Health Services staff met with Strong, reviewed his discharge instructions, and instructed him to follow-up with an institution provider on the next business day. (*Id.*).

On November 14, 2021, medical staff treated Strong on two separate occasions for complaints of pain in his lower left leg from his cellulitis. (Doc. 49-10). Based on his complaints, Strong was again transferred to an outside hospital for further evaluation. (*Id.*). At the hospital, Strong underwent treatment with antibiotics and was discharged back to FCI-Schuylkill on November 25, 2021. (Doc. 49-12). Upon his return to FCI-Schuylkill on November 25, 2021, Health Services staff met with Strong and reviewed his discharge instructions. (Doc. 49-13).

On November 29, 2021, Health Services staff met with Strong for a follow-up and he indicated that he was not using his recommended creams. (Doc. 49-14). Staff renewed his antibiotic, advised him to use the creams as directed, and scheduled him to follow-up in one week. (*Id.*).

Strong did not show up for his appointments on December 2, 2021, and December 10, 2021. (Doc. 49-15). On December 15, 2021, Health Services staff treated Strong and noted his continued noncompliance with recommended treatment. (Doc. 49-16). He was "counseled [ ] on significant non-compliance and no shows." (*Id.* at 3). Health Services staff noted Strong's continued noncompliance through January of 2022 and counseled him on noncompliance. (Doc. 49-17).

Dr. Mace-Leibson opines that treatment for cellulitis with an infused ten-day course of antibiotics is medically appropriate to treat the infection. (Doc. 49-5, Declaration of Ellen Mace-Leibson, at 7 ¶ 35). In this instance, this is precisely the treatment course followed.

11

Initially, Strong received treatment with an oral antibiotic. (Doc. 49-9, at 2). However, once it was determined that the oral antibiotic did not provide relief, Strong was treated with an IV antibiotic, a single dose antibiotic that lasts for ten days. (*Id.*). Dr. Mace-Leibson noted that Strong received the IV antibiotic on November 12, 2021. (Doc. 49-5, at 7 ¶ 35). She opined that waiting until November 14, 2021, to assess Strong's cellulitis was reasonable and did not violate the medical standard of care. (Doc. 49-5, at 7 ¶ 36). Dr. Mace-Leibson further noted that Strong has a history of noncompliance with medical directives and failure to appear for appointments. (Doc. 49-5, at 3 ¶ 15). After a comprehensive review of the pertinent medical records, Dr. Mace-Leibson concluded that Strong received medically reasonable treatment for the symptoms he experienced. (Doc. 49-5, at 6 ¶ 28; Doc. 49-5, at 7 ¶¶ 35-36). Strong fails to dispute this conclusion by failing to present expert testimony to establish the necessary elements of his claim.

The record confirms that Strong received extensive treatment for his cellulitis. There is no evidence reflecting that any alleged failure-to-treat caused Strong any harm, particularly because the evidence reveals that Strong has been noncompliant with recommended treatment and lab testing and failed to show-up for medical appointments. Because Strong fails to establish the elements of his medical negligence claim, *i.e.*, that the United States breached a duty to provide him with proper medical care for his cellulitis by demonstrating that the medical providers did not possess and employ the required skill and knowledge to treat his condition, or failed to exercise the care and judgment of a reasonable

12

medical professional, and that such conduct proximately caused his alleged injuries, the United States is entitled to judgment as a matter of law.

## IV. Conclusion

Consistent with the foregoing, the Court will grant the United States' motion (Doc. 45) and enter judgment in its favor. A separate Order shall issue.

*[signature]*
Robert D. Mariani
United States District Judge

Dated: April __, 2025